Yes, it is Debra Reysen. Good morning, Your Honors. I'm George Wall, representing Ms. Reysen in the Social Security matter. I'd like to reserve five minutes for rebuttal. Certainly. Debra Reysen was working as a food demonstrator at Costco when she slipped and some grease landed on her left shoulder, had two shoulder surgeries that never allowed her to recover much use of her left arm, had subsequent abdominal and gynecological surgeries with complications that have left her with chronic pain, and has not worked since 2004. The sole remaining issue in this case is whether her past work as a food demonstrator could be performed by her within the hypotheticals posed by the administrative law judge. The clerk asked me to comment on Lemire and Gutierrez, and I don't think those really directly apply here except that the ALJ had the duty and still has the duty to resolve conflicts in the evidence when there are apparent or obvious conflicts between the job description and the dictionary of occupational titles. And I think that's the key issue. But otherwise, I think there are errors throughout the record that were not addressed, particularly, more specifically. First of all, the DOT code number that the vocational expert provided was for advertising material distributor, not for food demonstrator. So the DOT code is incorrect from the start. The agency was correct in identifying the DOT for food demonstrator, but not the vocational expert. Then throughout the questioning of the vocational expert, which was fairly difficult to follow, nowhere did the vocational expert say that the claimant could do her past work as a food demonstrator in response to any of the judge's hypotheticals. It's the judge jumped to that, the ALJ jumped to that without really any evidence in the record saying that. The third thing is, is the statement by the ALJ of the residual functional capacity is conflicting. It says this individual can lift and carry 20 pounds occasionally and 10 pounds frequently with her right upper extremity and or both extremities, but is limited to only 7 pounds with her left under extremities. She can do no repetitive lifting. The two inconsistencies in that are to first say that she can lift 20 pounds occasionally and 20 pounds frequently with and or both extremities, and then to say she can do no repetitive lifting, which conflicts with saying that she can lift frequently. So that is another piece that was not addressed. The other problem was the case is the judge rejected Dr. Bowman's restrictions from any reaching. Dr. Bowman was a workers' comp evaluator who saw her as part of a litigated workers' comp claim and said she should do no reaching. Dr. Bowman is an orthopedic surgeon. The occupational therapist who evaluated her, Scott Murphy, also limited her reaching, not just overhead. The judge only limited her reaching overhead, which is inconsistent with those restrictions, relying on a DDS physician who did not have those records in front of him when he made his estimate of her work restrictions. The claimant was injured in 2004. Her last insurance was in 2007. The hearing wasn't held until 2013. So we were hamstrung by the fact that she didn't have health insurance during a lot of the period in question and only had medical treatment for extreme conditions, including her shoulder and her abdominal surgeries, so that it was very difficult to get evidence that far in the past. But if you rely on her testimony about the pain she was in both before 2007 and at the time of the hearing, we'd ask you to find her that she's limited to sedentary work and would meet the medical vocational rule 201.10. Questions? No. Do you want to reserve your time? I'll reserve. Yes, thank you. Good morning, Your Honors. Michael Howard for the commissioner. Your Honors, Raisin told the ALJ that her pain was so severe that she could not clean her house and that she could not walk for even one hour at her local mall. But earlier she told her treating doctors that medications relieved her pain, that she could handle her household chores and care for her grandchildren, and by the end of the relevant period she was preparing to return to work. Given these facts, the ALJ reasonably found she could return to her past relevant work as a food demonstrator at Costco. I'd like to jump to the step four. Is there anything, counsel, or is required to do? Your Honor, I think the main pieces of evidence we have in this case would be the work report, and I believe that's at page 184 of the record. The work history form? Is that what you're talking about? Yes, Your Honor. That doesn't really give much detail. I'm just curious. Did it require her? What does a food demonstrator actually do? It's not really in the record at all. Yes, Your Honor. Well, we do have the work history report, which she did not fill out. She filled out most parts of it. She did not fill out every single part. She did not fill out a long narrative description or anything along those lines. But we also have the characterization of what this job was by the vocational expert. I think we have to view that as part of the ALJ's step four finding, even if it's an as-actually-performed finding. The ALJ is understanding that this is what this occupation is. But what is it? It's not in the ALJ's opinion. I believe the ALJ does refer to it as a food demonstrator job and cites her work history report. Also, at the hearing with Reyson and her attorney present, the ALJ indicated, I believe I know what you did in that job, given your work history report. And I'm paraphrasing the hearing. I believe that's at page 31 of the excerpt to record. And even though there was questioning by the ALJ and the claimant's attorney about the requirements of different past jobs, there was never any dispute by Reyson as to the requirements of She never disputed what she said earlier in her work history report about this food demonstrator job. So these are the basic pieces of evidence on this issue. And as this Court recognized in the Pinto v. Massonari case, the Social Security regulations named two sources of information that may be used to define a claimant's past relevant work as actually performed, a properly completed vocational report, and the claimant's own testimony. So here we have the ALJ relying on the work history report as is contemplated under the agency's regulations. But her work history report did contain a lot of the work that she was doing after her injury and the accommodations that were made due to her injury, correct? Your Honor, that is a line of argument that the plaintiff, that Reyson has raised. That seems a bit hard to believe because in her work history report, she's indicating that the job is standing. She just says it's a standing job. Whereas when she describes her accommodations elsewhere in the record, her accommodations after her slip and fall accident, she's saying that she was doing a seated job. So she doesn't appear to be describing this as an accommodated position. And also when we look at the first page of the work history report, she's referring to the date range where she worked there, the entire date range. She's saying 2001 to 2004, and this is what I did in this job. So given that, the ALJ was allowed to rely on that work history report. And just to briefly touch on a statement made by Reyson's attorney today, that the code given from the Dictionary of Occupational Titles did not apply to this job, that that was identified an error. I believe we responded to that in our brief. But just to reiterate, the Dictionary of Occupational Titles, when it has a code for an occupation, that refers to a number of jobs that could fall under that occupational code. And that's recognized in the Gutierrez case. And also on the issue of the Gutierrez and Lemire cases, which the parties received an ECF notice about, I would agree with the statement made by Reyson's attorney that they do not directly show any error in this case, essentially. That, for instance, the Lemire case was concerned with someone with limitations on the use of their hands that conflicted with the DOT description for that job. And we just don't have that situation here. And lastly, Reyson's attorney did comment today that the vocational expert did not specifically say that she could do her past relevant work as a food demonstrator. We did respond to this in the briefing just to clarify that a vocational expert's testimony is not specifically required to support a Step 4 finding. So here we have the vocational expert's testimony identifying what this job is, and that was useful testimony for the LJ, but the LJ did not need that expert to then go and say she could do this job as actually performed. That was not legally necessary to the decision. Unless the Court has further questions, Your Honors, I deal the remainder of my time. No questions. Okay. Thank you very much, counsel. Thank you. Well, I would draw the Court's attention to page 381 or 421 of the record. This was completed by the claimant as part of a physical capacities evaluation in January 2006, two years after her accident. She notes that at that time she was doing light duty with no use of her upper extremity, and she described her job as having to lift 30 pounds plus, push-pull 50-pound carts, a cart weighing 50 pounds or more, standing four hours without a break, no sitting, and carrying 30 pounds plus, using her hands for repetitive motion, including cutting, cooking, scrubbing pots and pans, peeling fruits, et cetera. So that's the extent of the information we have as to the job description that Ms. Rayson was performing as a food demonstrator, but that would put it clearly into the medium range, well above the light range, and well above the restrictions that ALJ posed. So the ALJ did not address that, and the key is how this record was not developed as to what her duties at injury were, and how those matched up with her physical limitations. So I just have a couple of questions. So are you asking us to remand this for further development of the record? Yes, I am. I think the record's very garbled, and that would be the best outcome. And another question I have is, anywhere in this record did Ms. Rayson claim that she was experiencing pain or limitations in both arms, or was it always just her left arm? It was always her left, non-dominant arm. There were no complaints about her right arm at all. Thank you. Thank you. Thank you both very much for your argument. In this case, this matter is submitted.
judges: Wardlaw, Owens, Marquez